FOURTH NATIONAL BANK OF NEW YORK *v.* AMERICAN MILLS COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 62. Argued November 10, 1890. — Decided November 24, 1890.

A New York corporation consigned goods to G., a commission merchant in New York city, for sale. He advanced to it thereon, in cash and negotiable acceptances, more than the value of the goods, it having the benefit of the acceptances, which passed into the hands of *bona fide* holders. It then transferred the goods to him, as absolute owner, in discharge *pro tanto* of its debt to him. He then sold the goods to his wife, for full value, in part payment of money he owed her, and she resold them and received the proceeds. A creditor who had recovered judgments on some of the acceptances against G. and the corporation, brought a bill in equity against them and the wife of G. to have such proceeds applied on his judgments: *Held*,

(1) G. had a lien on the goods, which was foreclosed by the transfer of them to him;

(2) G. had a right to treat the goods as his own, so long as the acceptances were outstanding and his lien was unsatisfied;

(3) The creditor could not have the relief asked.

IN EQUITY.   The case is stated in the opinion.

*Mr. David Willcox*, (with whom was *Mr. William S. Opdyke* on the brief,) for appellant.

*Mr. Alexander Thain* for appellees, Mary J. Graeffe and William H. Garner.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Southern District of New York, by the Fourth National Bank of the city of New York, a national banking association, against the American Mills Company, (a New York corporation,) Albert J. Graeffe, Mary J. Graeffe, (his wife,) William H. Garner, and William H. Bowen. Its object was to procure the application upon judgments recovered by the plaintiff against the American Mills Company and Albert J. Graeffe, of the proceeds of certain merchandise which had been transferred by Albert J. Graeffe to Garner, as trustee for Mary J. Graeffe, to be applied upon debts due by Albert J. Graeffe to Mary J. Graeffe. After issue joined, proofs were taken, and the case was heard by Judge Coxe, who entered a decree dismissing the bill as to Albert J. Graeffe, Mary J. Graeffe, Garner and Bowen. Albert J. Graeffe, Bowen and the American Mills Company had joined in an answer to the bill, and Garner and Mary J. Graeffe had each put in a separate answer. The opinion of the Circuit Court is reported in 29 Fed. Rep. 611. An application for a rehearing was made by the plaintiff and denied, the opinion on the same being reported in 30 Fed. Rep. 420. The plaintiff has appealed from the decree. The suit was brought in December, 1881, before the passage of the act of July 12, 1882, (22 Stat. 163, c. 290, § 4.) *Charlotte Nat. Bank* v. *Morgan*, 132 U. S. 141.

The facts of the case are as follows, as stated by the Circuit Court in its opinion: The American Mills Company was a manufacturing corporation, having its principal office in the city of New York, and its manufactory at Warwick, Rhode Island. Albert J. Graeffe was the treasurer of the company and one of its trustees, and the commission merchant in the city of New York to whom its goods were consigned for sale. On February 28, 1881, he had in his possession merchandise of the company of the value of about $45,000. Prior to that time, he had accepted for the benefit of the company twenty-three drafts drawn upon him by the company, against the consignments, for $57,600.40. Of these twenty-three drafts, eleven, amounting to $27,600.40, were, after acceptance, returned by Graeffe to the company and used by it. The remaining twelve drafts, amounting to $30,000, were, after acceptance, discounted by Graeffe, and the proceeds were remitted by him to the company. Eleven other drafts, amounting to $32,500, drawn by the company upon Graeffe, were accepted by him, but the company did not have the benefit of any of them, because they were retained by Graeffe and used by him in his own business. None of these thirty-four drafts were due on the 28th of February, 1881. On that day, the company transferred to Graeffe, as absolute owner, the goods which he so had in his possession, he taking them in discharge *pro tanto* of the company's indebtedness to him. On the following day, he sold the goods to Garner, as trustee for Mary J. Graeffe, for $45,064.30, in part payment of debts due from him to her. They were afterwards sold through Bowen, and the proceeds were paid to Mrs. Graeffe, or to Garner for her. On the 3d of March, 1881, Graeffe made a general assignment for the benefit of his creditors, and the American Mills Company failed at the same time. On the 30th of March, 1881, the plaintiff recovered a judgment against the Mills Company and Graeffe, in the Supreme Court of the State of New York, on one of the acceptances for $2500, which formed part of the $30,000 of acceptances; and on the 22d of June, 1881, it recovered another judgment against the same parties, in the Court of Common Pleas for the city and county of New

York, on six others of the acceptances, being one for $2500 and one for $3000, forming part of the $30,000 of acceptances, and four for $3000 each, forming part of the $32,500 of acceptances. Executions upon these judgments were returned unsatisfied in September, 1881. Subsequently to the failure of the company, and before July 1, 1881, other judgments were obtained against it in New York and Rhode Island for over $70,000.

The theory of the bill is, that Mary J. Graeffe is indebted to the American Mills Company for the value of the goods embraced in the transfer to her, on the ground that such transfer was without consideration and constructively fraudulent. No allegation of actual fraud is made against any person, and it is clear that there was a *bona fide* indebtedness from Graeffe to his wife of over $100,000, created by loans to him of her own money.

It is contended by the plaintiff that the transfer of the goods by the company to Graeffe was made in contemplation of insolvency, and therefore was void by virtue of the provision of section 4, title 4, chapter 18, part 1, of the Revised Statutes of New York (1 Rev. Stats. N. Y., 603), which declares that it shall not be lawful for any incorporated company to "make any transfer or assignment in contemplation of the insolvency of such company, to any person or persons whatever;" that Graeffe had no right in the goods which he could transfer in payment of his debt to his wife, and to the exclusion of the debt of the company and himself to the plaintiff; that Mrs. Graeffe acquired no right in the goods by virtue of the transfer, and was liable for their value; and that, at all events, as to the three acceptances amounting to $8000, and forming part of the $30,000 of acceptances, of which the company had the benefit, the sole right of Graeffe in the goods was to apply their proceeds to the payment of those three acceptances.

But it appears in evidence that, by the 28th of February, 1881, at which time Graeffe had in his possession the goods in question, of about the value of $45,000, he had advanced, as against those goods, by cash and acceptances, the sum of about

$54,000. The acceptances were· negotiable securities, which had passed in the market into the hands of *bona fide* holders, and on which Graeffe was primarily liable. He had a valid lien on the goods for the $54,000. The legal title to them, which the American Mills Company held when it gave the bill of sale to Graeffe, on the 28th of February, 1881, was, therefore, of no value, because the goods were then encumbered for more than they were worth. That company, in transferring the goods to Graeffe, as absolute owner of them, on the 28th of February, 1881, recognized the lien and admitted that its liability to Graeffe exceeded the value of the goods; and the transaction was in effect a foreclosure of the lien. The ·interest of the American Mills Company in the goods was only contingent, and no court of equity, in a case like the present, can declare that Graeffe could not transfer the goods to Mrs. Graeffe, as against his other creditors and those of the company.

Under the statute of New York of April 16, 1830, (Laws of 1830, c. 179, p. 203,) Graeffe had a right to treat the goods as his own, so long as his negotiable acceptances, of which the company had had the benefit, were outstanding, not taken up by it, and his lien on the goods was unsatisfied. *Cartwright* v. *Wilmerding*, 24 N. Y. 521, 530.

The cases cited by the plaintiff are cases where the question as to the right of property in the goods, as between the consignor and the factor, was raised by the consignor, or where the consignor had not conveyed all his title in them to the factor.

It is contended by the plaintiff that the lien of Graeffe did not exceed $21,715.58. Graeffe at that time claimed a lien for advances, which was conceded by the company, for the amount of, at least, $54,215.58. The plaintiff claims that the $32,500 of acceptances outstanding, of which Graeffe had had the benefit, and from which the company had derived no benefit, should be deducted from the $54,215.58, leaving a balance of $21,715.58. But it appears that the items composing the $32,500, and which were accommodation drafts of the company on Graeffe, accepted and used by him, were neither

charged on the one side of his account with the company nor credited on the other. These accommodation acceptances were not due on the 28th of February, 1881, and have never been paid by the company. Graeffe was not bound to give credit for them to the company until the company had paid them and surrendered them to him.

As to the three acceptances, amounting to $8000, they formed part of the acceptances of which the company had the benefit, and, while the plaintiff holds those acceptances against Graeffe, it cannot take from him, or from Mrs. Graeffe, the property which he held as security against them. Its position is no better than that of the company would have been, and the company could not have deprived Graeffe of the goods without discharging his obligation on those particular acceptances. Moreover, even regarding the $8000 of acceptances as surrendered and cancelled, and deducted from the $54,215.58, there is left $46,215.58, which amount exceeds the value of the goods transferred to Mrs. Graeffe.

*Decree affirmed.*